# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION


KARL I. NELSON,

     Petitioner,

-vs-                                                                Case No. 8:06-CV-026-T-27MSS

SECRETARY, FLORIDA DEPT.
OF CORRECTIONS,

     Respondent.

_____/


## ORDER

     Petitioner, an inmate of the Florida penal system proceeding *pro se,* initiated this action by

filing a Petition for Writ of Habeas Corpus (hereinafter "petition") pursuant to 28 U.S.C. § 2254

(Dkt. 1), and a memorandum of law and appendix in support of the petition (Dkts. 2-3). Petitioner

challenges his convictions for DUI manslaughter (two counts) and DUI causing serious bodily injury

(two counts) entered by the Sixth Judicial Circuit Court, Pinellas County, Florida. Respondent has

filed a motion to dismiss/response to the petition (Dkt. 20), and Petitioner has filed a reply thereto

(Dkt. 23). Petitioner also filed his Request to Supplement Argument (Dkt. 25) in which he

supplemented the argument he made in his petition regarding the state court's assessment of victim

injury points to enhance his sentence (See Dkt. 1 at pg. 32) . The matter is now before the Court for

consideration on the merits. An evidentiary hearing is not required for the disposition of this matter.

Rules Governing Section 2254 Cases 8(a) (2008).

## Background

On December 6, 1996, Petitioner was charged by Amended Information with two counts of DUI manslaughter, two counts of manslaughter/culpable negligence, two counts of DUI causing serious bodily injury, and driving while license suspended or revoked (Dkt. 24, Ex. 1, Vol II at pgs. 232-34). On December 9, 1996, the case proceeded to jury trial. On December 13, 1996, the jury found Petitioner guilty on all charges (Id. at pgs. 274-80). On January 14, 1997, the trial court adjudicated Petitioner guilty and sentenced him to 15 years prison on each DUI manslaughter count, to 5 years prison on each DUI with serious bodily injury count, and to time served on the driving while license suspended or revoked count (Id. at pgs. 281-295).[1] All sentences ran consecutively (Id. at pg. 295).

Petitioner appealed, and on December 9, 1998, the state appellate court affirmed Petitioner's convictions and sentences. *See Nelson v. State*, 728 So.2d 222 (Fla. 2d DCA 1998)[table]; Dkt. 24, Ex. 6.

After filing a number of post-conviction motions and appeals, Petitioner was eventually resentenced on February 13, 2004, to 29.3 years of imprisonment (Dkt. 24, Ex. 26, Vol. 1 at pgs. 18-22). Petitioner appealed, and on September 7, 2005, the state appellate court affirmed the resentencing judgment. *See Nelson v. State*, 911 So. 2d 1243 (Fla. 2nd DCA 2005)[table]; Dkt. 24, Ex. 30.

Petitioner filed his petition for federal habeas relief on January 2, 2006,[2] raising fifteen

---

[1]Petitioner was not sentenced on the manslaughter/culpable negligence counts.

[2]Although the Court received Petitioner's petition on January 5, 2006, a pro se inmate's petition is deemed filed the date it is delivered to prison officials for mailing. *Houston v. Lack,* 487 U.S. 266, 271-272 (1988); *Adams v. United States,* 173 F.3d 1339, 1340-41 (11th Cir. 1999); *Garvey v. Vaughn,* 993 F.2d 776, 780 (11th Cir. 1993). Petitioner delivered his petition for mailing on January 2, 2006 (Dkt. 1 at 1).

claims for relief (Dkt. 1).

## Standards of Review

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). It is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." *Id.* *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

### Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland's* two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

## Discussion

### I. Timeliness of Petition

Respondent contends that the instant petition, with the exception of Petitioner's final two claims, should be denied as time-barred. Specifically, Respondent claims that with the exception

3

of Grounds Fourteen and Fifteen of Petitioner's petition, which challenge the state court's second resentencing judgment, all of Petitioner's claims challenge the state judgment of conviction. Respondent urges that the judgment of conviction became final ninety days after the state appellate court affirmed his conviction on December 9, 1998, i.e., March 9, 1999. See 28 U.S.C. § 2244(d)(1)(A) (one-year period for habeas petitions begins to run from the "date which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review"); *Bond v. Moore*, 309 F.3d 770 (11th Cir. 2002) (finding that "the limitations period did not begin to run until the 90-day window during which [the § 2254 petitioner] could have petitioned the United States Supreme Court for a writ of certiorari expired."); Sup. Ct. R. 13 ("A petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort . . . is timely when it is filed . . . within 90 days after entry of the judgment. . . . or order sought to be reviewed, and not from the issuance date of the mandate."). Respondent argues that the second resentencing judgment on February 13, 2004, "does not restart [Petitioner's] time for attacking his state conviction under § 2244(d)(1)." (Dkt. 20 at pg. 12). Respondent concludes that pursuant to *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), 2244(d)'s statute of limitations is applied on a claim-by-claim basis, and therefore, Grounds One through Thirteen of the petition, which challenge the judgment of conviction, are time-barred because Petitioner did not bring these claims within one year after direct review of the conviction and initial sentence had concluded.[3] The Court disagrees.

---

[3]Respondent asserts that the limitations period for bringing an attack on Petitioner's conviction had expired on March 10, 2000, one year after his judgment of conviction and original sentence became final, and that Petitioner's August 11, 2000 post-conviction motion, and all his subsequently filed motions for post-conviction relief did not toll the limitations period because it had already expired. *See Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001) (rejecting theory that limitations period was reinitiated upon filing of timely rule 3.850 motion outside limitations period).

"AEDPA's statute of limitations runs from the date the judgment pursuant to which the petitioner is in custody becomes final, which is the date both the conviction *and* sentence the petitioner is serving become final." *Ferreira v. Secy, Dep't of Corr.*, 494 F.3d 1286, 1288 (11th Cir. 2007), *cert. denied* 129 S.Ct. 1033 (2009)(emphasis in original). Therefore, the judgment that imprisons Petitioner did not become final until September 7, 2005, when the state appellate court affirmed the February 13, 2004, resentencing judgment. *See Nelson v. State*, 911 So.2d 1243 (Fla. 2d DCA 2005); Dkt. 24, Ex. 30. Petitioner filed his federal habeas petition on January 2, 2006 (Dkt. 1 at 1). Accordingly, Petitioner's petition is timely.[4]

## II. Evidentiary Issues (Grounds One through Seven)

A. Grounds One, Two and Five

Ground One: Conviction obtained by denying introduction of relevant evidence where state has not provided a full and fair hearing on the merits of the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fifth and Fourteenth Amendments (Dkt. 1 at pg.

---

[4]Because the Court has determined that Petitioner's petition was timely filed, it is unnecessary to address the arguments Petitioner raises in his reply that 1) he is entitled to equitable tolling; 2) his petition is timely because his January 7, 1999, motion to reduce or modify his sentence pursuant to Florida Rule of Criminal Procedure, Rule 3.800(c) tolled the AEDPA limitation period; and 2) even if his petition were untimely, he is entitled to an "actual innocence" exception to the time bar pursuant to *Schlup v. Delo*, 513 U.S. 298 (1995). (See Dkt. 23 at pgs. 5-11). In any event, Petitioner has not demonstrated entitlement to equitable tolling. Moreover, this Court knows of no "actual innocence" exception to the federal limitations period. *See Helton v. Sec'y for Dep't of Corr.*, 259 F.3d 1310, 1315 (11th Cir. 2001); *Wyzykowski v. Dept. of Corr.*, 226 F.3d 1213, 1217 (11th Cir. 2000). Furthermore, Petitioner does not present a colorable claim of actual innocence as he does not support the actual innocence claim "with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schulp, 513 U.S.* at 324. And finally, a Rule 3.800(c) motion does not toll the time under AEDPA because it does not qualify as an "application for State post-conviction or other collateral review with respect to the pertinent judgment" under 28 U.S.C. § 2244(d)(2). *See Alexander v. Sec'y, Dep't of Corr.*, 523 F.3d 1291, 1297 (11th Cir. 2008).

6).

Ground Two: Conviction obtained by denying defense witness, Catherine Johnson's, relevant testimony where state has not provided a full and fair hearing on the merits of the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fifth and Fourteenth Amendments (Dkt. 1 at pg. 8).

Ground Five: Conviction obtained by denying introduction of relevant testimony from Tricia Fuqua as to Mark Fuqua's state of mind in violation of the due process clause of the Fourteenth Amendment (Dkt. 1 at pg. 14).

Petitioner's theory of defense at trial was that his passenger, Mark Fuqua (hereinafter "Fuqua"), was depressed and suicidal, and that while Petitioner was driving the car Fuqua punched him multiple times and knocked him unconscious. Fuqua then steered the car head-on into another vehicle in order to commit suicide.

In Ground One, Petitioner essentially asserts that he was denied his rights under the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fifth and Fourteenth Amendments when the state trial court excluded Brenda Kriley's (hereinafter "Kriley") testimony that on the date of the accident while at an office party Fuqua asked her about obtaining life insurance and whether he could obtain insurance that day; that Fuqua had been drinking at the office party; that Fuqua was depressed because he could not live with his wife and child, and could not see his child whenever he wanted to; that after the accident Fuqua's sister found Fuqua's life insurance application; and that Fuqua's sister read Kriley a poem that Fuqua had written on the date of the accident which included language that intimated that he wanted to die.

In Ground Two, Petitioner asserts that he was denied his rights under the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fifth and Fourteenth

6

Amendments when the state trial court excluded Catherine Johnson's (hereinafter "Johnson") testimony that Fuqua had told her that: 1) in November and December of 1995, he had missed some days of work because he had been checked into a medical facility for treatment of depression; 2) there was a "cloud in his life," the "only way he could find peace was death," and "one day he would find the right spot on his wrist;" 3) he was taking medication for manic depression; and 4) Thanksgiving to Christmas was "a lousy time of year" and that he was upset about not seeing his son around Christmas.

In Ground Five, Petitioner avers that he was denied his rights to due process under the Fourteenth Amendment when the state trial court excluded testimony from Fuqua's wife, Tricia Fuqua, that Fuqua had scars from previous suicide attempts; that Fuqua had been previously "Baker Acted;" and that Fuqua was receiving counseling and taking medication for depression.

Petitioner argues that the state trial court erred in excluding Kriley, Tricia Fuqua, and Johnson's testimony, and that the exclusion of their testimony limited his opportunity to present his defense and deprived him of a fair trial in violation of his rights under the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fifth and Fourteenth Amendments.

Initially, federal courts have jurisdiction to entertain petitions for habeas relief only from persons who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Claims that are not based on a violation of the United States Constitution are not cognizable in a 28 U.S.C. § 2254 petition for writ of habeas corpus. *Barclay v. Florida*, 463 U.S. 939 (1983). Errors that do not infringe on federally protected rights provide no basis for federal habeas corpus relief.

To the extent Petitioner asserts that the state trial court erred in excluding the testimony of Kriley, Tricia Fuqua, and Johnson, this issue concerns the admissibility of evidence, generally not cognizable in a § 2254 federal habeas petition. Where a claim of constitutional magnitude is lacking, the federal court in the habeas corpus context will not review a state trial court's actions concerning the admissibility of evidence. *Cargill v. Turpin*, 120 F.3d 1366, 1375 (11th Cir. 1997) (citing *Alderman v. Zant*, 22 F.3d 1541, 1555 (11th Cir.), *cert. denied*, 513 U.S. 1061 (1994); *Osborne v. Wainwright*, 720 F.2d 1237, 1238 (11th Cir.1983)).

To the extent Petitioner asserts that the exclusion of Kriley, Tricia Fuqua, and Johnson's testimony limited the opportunity to present his defense, and therefore deprived him of due process and a fair trial in violation of his rights under the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fifth and Fourteenth Amendments, the claims are unexhausted and procedurally barred, and without merit.

Pursuant to *Duncan v. Henry*, 513 U.S. 364 (1995), Petitioner must fairly present the substance of his federal claim to the state courts in order to satisfy the exhaustion requirement. Briefing an issue as a matter of state law, however, is not sufficient to exhaust a federal claim of the equivalent ground. "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan*, 513 U.S. at 365-66. "Thus, to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues." *Jimenez v. Fla. Dep't*

*of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007) (quoting *Snowden v. Singletary*, 135 F.3d 732,

735 (11th Cir. 1998) (concluding that federal constitutional issue was sufficiently raised where

although the petitioner did not specifically state on direct appeal that the issues were to be

reviewed under the Federal Constitution, he provided enough information about the claims

(including cites to Supreme Court cases) to notify the state courts that the challenges were being

made on both state and federal grounds.). "A litigant wishing to raise a federal issue can easily

indicate the federal law basis for his claim in a state court petition or brief, for example, by citing

in conjunction with the claim the federal source of law on which he relies or a case deciding such

a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S.

27, 32 (2004).

In his Initial Brief on direct appeal of his convictions and sentences, Petitioner cited

exclusively to state cases, and all of his substantive arguments addressed Florida law (Dkt. 24,

Ex. 2 at pgs. 7-12, 18). None of the cases he cited were decided on federal grounds and he did

not otherwise indicate that he intended to raise federal claims. *Baldwin*, 541 U.S. at 32. Nothing

in his arguments would have alerted the state court to the presence of a federal claim about due

process. Therefore, Petitioner failed to exhaust his federal claims.

Moreover, Petitioner would now be barred from raising his constitutional claim before

the state court. Florida law procedurally bars new claims or claims that have already been raised

in prior petitions when "the circumstances upon which they are based were known or should have

been known at the time the prior petition was filed." *Johnson v. Singletary*, 647 So.2d 106, 109

(Fla. 1994). In order to overcome this procedural bar in federal court, petitioners must

"demonstrate cause for the default and actual prejudice as a result of the alleged violation of

federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). Petitioner does not establish either cause and prejudice or a miscarriage of justice. Accordingly, Petitioner's federal claims in Grounds One, Two, and Five are unexhausted and procedurally barred.

Even if, arguendo, Petitioner's federal claims were not procedurally barred, they are without merit. As a threshold matter, the state court decision settles that the proposed testimony was inadmissible under Florida's applicable evidentiary rules. This state law determination cannot be revisited on federal habeas review, as state courts are the ultimate expositors of state law. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)(citations omitted). "The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). Generally, a state court evidentiary ruling cannot rise to the level of a federal due process violation "unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 202-03 (1977)). Reasonable restrictions may limit a defendant's right to present relevant evidence. *United States v. Scheffer*, 523 U.S. 303, 308 (1998). *See also Michigan v. Lucas*, 500 U.S. 145, 149 (1991) ("[T]he right to present relevant testimony is not without limitation. The right 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'") (quoting *Rock v. Arkansas*, 483 U.S. 44, 55 (1987)) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)). Petitioner fails to present any factual evidence or legal authority to support a finding that the state court's exclusion

of Kriley, Tricia Fuqua, and Johnson's testimony fundamentally offends some principle of justice as to amount to a federal due process violation. *See Montana v. Egelhoff*, 518 U.S. at 43.

The state court's exclusion of Kriley, Tricia Fuqua, and Johnson's testimony did not rise to the level of a federal due process violation. Petitioner testified at trial, and through his testimony he was able to present his defense that Fuqua was depressed and suicidal, and that he attacked and knocked out Petitioner while Petitioner was driving (Dkt. 24, Ex. 1, Supp. VI at pgs. 859-904). Dr. Wood, the pathologist who performed the autopsy on Fuqua (Dkt. 24, Ex. 1, Supp. IV at pg. 590), testified that she observed multiple scars on Fuqua's wrists and arms that could have been self-inflicted (Dkt. 24, Ex. 1, Supp. V at pg. 777). Moreover, this Court concludes that even had the state trial court admitted Kriley, Tricia Fuqua, and Johnson's testimony, the jury would not have reached a different verdict. In the event constitutional error is found in a habeas proceeding, the relevant harmless error standard is set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). The test is "less onerous" than the harmless error standard enunciated in *Chapman v. California*, 386 U.S. 18 (1967). "The test is whether the error had substantial and injurious effect or influence in determining the jury's verdict. Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht*, 507 U.S. at 637.

As noted, *supra*, Petitioner testified that on the day of the accident Fuqua "had gotten depressed." (Dkt. 24, Ex. 1, Supp. VI at pg. 876). He also testified that he was trying to console Fuqua about not seeing his son (Id. at pgs. 876-77, 881, 891). He then testified that Fuqua stated to him "if I had a gun, I would blow my fucking head off" and that the tone of Fuqua's voice was

11

"determined." (Id. at pg. 878). He attested that while they were driving to the strip club, Fuqua was upset and crying (Id. at pg. 896). Petitioner testified that Fuqua subsequently stated that he "want[ed] to fucking die" and began grabbing the steering wheel and punching Petitioner (Id. at pgs. 897-98). Petitioner testified that the next thing he remembered was waking up in the hospital (Id. at pgs. 899-900).

Furthermore, other than Petitioner's testimony, there was no evidence that Fuqua had attacked Petitioner and rendered Petitioner unconscious, or that Fuqua subsequently drove the car and crashed it into another vehicle. There was no evidence or eyewitness testimony indicating that the vehicle Petitioner was driving swerved or was moving erratically while Fuqua was allegedly attacking Petitioner.[5] When Deputy Ben Barrington arrived at the scene almost immediately after the crash, he found Petitioner in the driver's seat slumped up against the steering wheel with his opened beer bottle still between his legs. Fuqua was seated in the passenger's side of the car, and he was leaning over on to Petitioner's shoulder (Dkt. 24, Ex. 1, Supp. III at pgs. 225-26). Corporal Hensley, the officer who investigated the crash and had an expertise in accident reconstruction, determined that Fuqua was not operating the car at the time of the crash (Dkt. 24, Ex. 1, Supp. VII at pgs. 1021-23). Moreover, there was no evidence of injuries to Petitioner's face that would be consistent with his being beaten about his face and head to the point of unconsciousness (Id. at pgs. 1015-17). Accordingly, even if it was error to exclude Kriley, Tricia Fuqua, and Johnson's testimony, Petitioner fails to demonstrate, in light of the entire trial record, actual prejudice under *Brecht.* Consequently, Grounds One, Two, and

---

[5] The Court notes that it had been raining at the time of the crash, and the roads were wet (Dkt. 24, Ex. 1, Supp. VII at pg. 1014-15).

Five warrant no federal habeas relief.

B. Grounds Three and Four

Ground Three: Conviction obtained by use of wrongfully obtained privileged communication of hospital chaplain violating the First and Fourteenth Amendments (Dkt. 1 at pg. 10).

Ground Four: Conviction obtained by permitting other bad acts of Petitioner to come before the jury through impeachment of defense witness depriving the Petitioner of due process and a fair trial under the Fourteenth Amendment (Dkt. 1 at pg. 12).

In Ground Three, Petitioner claims that the state trial court erred in allowing into evidence privileged communications between Petitioner and a hospital chaplain who was acting as a spiritual advisor.[6] In Ground Four, Petitioner asserts that prior to trial, he and the State stipulated that his driver's license had been suspended before the time of the crash. During

---

[6] § 90.505, Fla. Stat. states:

Privilege with respect to communications to clergy

(1) For the purposes of this section:

(a) A "member of the clergy" is a priest, rabbi, practitioner of Christian Science, or minister of any religious organization or denomination usually referred to as a church, or an individual reasonably believed so to be by the person consulting him or her.

(b) A communication between a member of the clergy and a person is "confidential" if made privately for the purpose of seeking spiritual counsel and advice from the member of the clergy in the usual course of his or her practice or discipline and not intended for further disclosure except to other persons present in furtherance of the communication.

(2) A person has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication by the person to a member of the clergy in his or her capacity as spiritual adviser.

(3) The privilege may be claimed by:

(a) The person.

(b) The guardian or conservator of a person.

(c) The personal representative of a deceased person.

(d) The member of the clergy, on behalf of the person. The member of the clergy's authority to do so is presumed in the absence of evidence to the contrary.

13

cross-examination of Brenda Kriley, the State asked her whether or not she was present when Petitioner was cited for driving with a suspended license (Dkt. 24, Ex. 1, Supp. VI at pgs. 834-37). Petitioner argues that because he and the State had stipulated to the fact that his driver's license was suspended at the time of the crimes, the matter was irrelevant and the State raised the issue merely to show Petitioner's bad character. He further argues that the state trial court's failure to sustain his objection to the State's question regarding this matter deprived him of a due process and a fair trial.

Petitioner's challenge to the state trial court's evidentiary rulings is a state law evidentiary issue not cognizable in a § 2254 federal habeas petition. *See Cargill v. Turpin*, 120 F.3d at 1375. Moreover, a review of Petitioner's Initial Brief on direct appeal shows that Petitioner relied only upon state statutory and case law in support of his arguments on these issues (Dkt. 24, Ex. 2 at pgs. 13-17). His failure to present federal constitutional argument in the state courts results in a procedural bar of the federal claims in the § 2254 petition. Petitioner has not demonstrated cause and prejudice or a miscarriage of justice to obtain federal review of the procedurally barred federal claims.

Accordingly, Grounds Three and Four do not warrant federal habeas corpus relief.

C. Ground Six

Conviction obtained by wrongfully introducing evidence that should have been suppressed based on unconstitutional statutes allowing for blood-draws in violation of the Fourth and Fourteenth Amendments (Dkt. 1 at pg. 16).

Petitioner argues that he was improperly convicted based on evidence, his blood samples, obtained from an illegal search and seizure in violation of his Fourth and Fourteenth Amendment rights.

14

This is not a valid ground for granting the prisoner's habeas petition. Where the state has provided the opportunity for full and fair litigation of a Fourth Amendment Claim, a state prisoner may not be granted habeas relief on the ground that evidence obtained through unconstitutional search and seizure was introduced at his trial. *Stone v. Powell*, 428 U.S. 465 (1976). In applying *Stone*, the Eleventh Circuit has interpreted "full and fair consideration" as follows:

> For a claim to be fully and fairly considered by the state court, where there are facts in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court. Where, however, the facts are undisputed, and there is nothing to be served by ordering a new evidentiary hearing, the full and fair consideration requirement is satisfied where the state appellate court, presented with an undisputed factual record, gives full consideration to defendant's Fourth Amendment claims.

*Mincey v. Head*, 206 F.3d 1106, 1125 (11th Cir. 2000) (citations omitted); see also *Tukes v. Dugger*, 911 F.2d 508 (11th Cir. 1990).

In the instant case, Petitioner has not demonstrated that the hearing conducted by the state trial court on his motion to suppress and the state district court of appeal's consideration of the denial of the motion to suppress denied him the opportunity of full and fair litigation of his Fourth Amendment claims (See Dkt. 24, Ex. 1, Supp. 1 at pgs. 327-75). A review of the record in Petitioner's case shows that he was afforded the opportunity to develop his claims and have them adjudicated in the state courts and thus, he cannot relitigate the same claims here in this federal habeas petition. Therefore, Ground Six is not reviewable by this Court.

D. Ground Seven

Conviction obtained by use of gruesome photographs that were more prejudicial than probative and denied Petitioner his constitutional right to a fair trial (Dkt. 1 at pg. 18).

In Ground Seven, Petitioner argues he was denied due process and a fair trial when the state trial court allowed the State to introduce a photograph of the deceased eight-year old victim while she was still inside the vehicle into which Petitioner crashed. Respondent argues Petitioner's federal claim is, *inter alia*, unexhausted and procedurally barred. The Court agrees.

In his Initial Brief on direct appeal, Petitioner cited exclusively to state cases (Dkt. 24, Ex. 2 at pg. 27). None of the cases he cited were decided on federal grounds, and he did not otherwise indicate that he intended to raise federal claims. *Baldwin*, 541 U.S. at 32. Nothing in his arguments would have alerted the state court to the presence of a federal claim. *See Hartge v. McDonough*, 210 Fed. Appx. 940 at *943 (11th Cir. 2006)(unpublished opinion)(Petitioner's arguments in state court, that a photograph was inflammatory and prejudicial and that he did not receive a fair trial, were insufficient to preserve his federal due process claim). Petitioner would now be barred from raising his constitutional claim before the state court. Petitioner does not establish either cause and prejudice or a miscarriage of justice. Accordingly, Petitioner's federal claim in Ground Seven is unexhausted and procedurally barred.

### III. Ineffective Assistance of Counsel Claims (Grounds Eight through Thirteen)

Petitioner claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing

16

> ineffective assistance of counsel claims. According to Strickland, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland v. Washington*, 466 U.S. at 697; *Sims v. Singletary*, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland v. Washington*, 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Petitioner must demonstrate that error by counsel prejudiced the defense. *Strickland v. Washington*, 466 U.S. at 691-92. To meet this burden, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

17

outcome." *Strickland v. Washington*, 466 U.S. at 694.

 *Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland v. Washington*, 466 U.S. at 690-91. Petitioner cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

 In his state Rule 3.850 post-conviction motion, Petitioner claimed counsel were ineffective for failing to properly investigate and prepare his defense; for failing to adequately argue both the motion to suppress the blood-test results and the motion to suppress Petitioner's statements to Chaplain Buckley; for failing to object to prosecutorial misconduct; and for failing to object to the State's charging him with both DUI manslaughter and culpable negligence (Dkt. 24, Ex. 15). The state court denied the claims of ineffective assistance of counsel as follows:

> In order to prove a claim of ineffective assistance of counsel, Defendant must establish both that counsel's performance was deficient, and that counsel's deficient performance prejudiced Defendant's case. *See Strickland v. Washington*, 466 U.S. 668 (1984).

(Dkt. 24, Ex. 17 at pg. 2). Because the state court correctly recognized that *Strickland* governs

each claim of ineffective assistance of counsel, Petitioner cannot meet the "contrary to" test in Section 2254(d)(1). Petitioner instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts.

A. Ground Eight

Denial of effective assistance of counsel for failure to properly investigate, prepare, and present the Petitioner's case at trial (Dkt. 1 at pg. 20).

Petitioner alleges that trial counsel were ineffective for: 1) failing to obtain his medical records which showed the injuries he sustained from Fuqua attacking him; 2) failing to obtain Fuqua's prior mental health history which showed Fuqua's history of depression and suicidal thoughts; 3) failing to present medical experts to testify how Fuqua's combining alcohol and anti-depressant medication affected his mental state; and 4) failing to present Catherine Johnson's testimony regarding Fuqua's mental state. Petitioner raised this claim in his Rule 3.850 post-conviction motion. In denying this claim, the state circuit court stated:

> Defendant includes four specific instances of ineffective assistance of counsel within this issue. First, Defendant claims counsel was ineffective for failing to obtain Defendant's medical records. Defendant claims that he informed counsel that he suffered a broken nose during the altercation with Mark Fuqua, but that counsel failed to obtain his medical records or investigate the actual extent of Defendant's injuries. Two of the doctors who treated Defendant in the emergency room after the accident testified to his injuries. Neither doctor testified that Defendant's nose was, or appeared to be, broken. One of the doctors testified that Defendant's physical injuries consisted of a broken ankle and "bumps and scratches consistent with a car accident." *See Trial Transcript, p. 626, 628.* The other read a list of clinical findings from his notes, without mention of a broken nose. *See Trial Transcript, pp. 634-36.* The state trooper who investigated the accident testified that he saw no bruises on the Defendant's face. *See Trial Transcript, pp. 1015-17.* The State introduced a booking photograph of Defendant, which showed no obvious facial injuries. *See id.*
>
> In order to prove a claim of ineffective assistance of counsel, Defendant must establish both that counsel's performance was deficient, and that counsel's

19

deficient performance prejudiced Defendant's case. *See Strickland* v. *Washington,* 466 U.S. *668* (1984). In this case, counsel attempted to establish that Defendant's injuries from being allegedly beaten about the head by Mark Fuqua may not have been visible. *See Trial Transcript, pp. 1029-31.* Counsel also attempted to establish that Defendant may not have looked the same two days after the accident when the booking photograph was taken as he did at the time of the accident. *See* id. Defendant has not provided any documentation that would show that his nose had been broken, or that there is any reason to believe that the medical records would have reflected a broken nose, contrary to the testimony of the treating physicians. Defendant stated at trial that he had not seen his medical records. *See Trial Transcript, pp. 917-18.* Therefore, Defendant has failed to establish that he was prejudiced by counsel's failure to obtain the medical records.

Second, Defendant claims counsel failed to obtain Mark Fuqua's prior mental history. Defendant claims that had adequate investigation been conducted, counsel would have been able to properly lay the foundation for introduction of evidence of Mark Fuqua's depression and desire to commit suicide. The record shows that counsel attempted numerous times and through numerous witnesses to introduce such evidence. *See Trial Transcript, pp. 676-88.* However, counsel was precluded from doing so by the Court's rulings that the evidence was inadmissible, either as hearsay or as being too remote in time from the accident or both. *See Trial Transcript, pp. 688-96, 755-65.* Defendant alleges that Mark Fuqua's mental condition or instability would have been readily available had counsel interviewed family members and other acquaintances. [sic]

Other than Cathy Johnson, Defendant does not identify any of the family members, what they would have said, or how that would have made Mark Fuqua's alleged depression or desire to commit suicide admissible in light of the Court's rulings. Defendant claims that Cathy Johnson, the day labor supervisor of Mark Fuqua, was able to testify that he was taking psychotropic medications that could have affected his behavior, if taken properly without the ingestion of alcohol. However, Defendant fails to establish how Cathy Johnson possesses the expertise to testify to the effects of psychotropic medication on one of her employees. Furthermore, trial counsel attempted to introduce Cathy Johnson's testimony, but was precluded from doing so after a proffer because the testimony she could provide was hearsay and remote. *See Trial Transcript, pp. 987-91.*

Additionally, as evidence of trial counsel's ineffectiveness in failing to prepare a defense prior to trial, Defendant claims that counsel stated at trial that they were still preparing the defense. However, the actual statement was "we are still planning our defense and have not decided whether to put on a case or not." *See Trial Transcript, p. 548.* The statement refers to trial strategy, and does not imply that counsel did not investigate the case prior to trial.

20

Defendant also claims that counsel was not even aware of who was listed on the defense witness list because they did not know whether Dr. Wood was listed as a defense witness. As Dr. Wood did testify as a defense witness, Defendant has failed to establish any prejudice from counsel's uncertainty.

Third, Defendant claims that counsel was ineffective for failing to present medical experts. Defendant claims that, rather than relying on the testimony of the medical examiner, counsel should have obtained the testimony of medical authorities who could have explained the effects of the psychotropic drugs prescribed to Mark Fuqua. During a proffer examination, in answer to counsel's hypothetical question regarding the results of a person diagnosed as manic depressive failing to take his prescribed medication and drinking alcohol, Dr. Wood opined that it was impossible to say, and would depend on a number of factors. *See Trial Transcript, pp. 749-50.* Defendant has not shown that Dr. Wood's opinion was incorrect, or that he has obtained a contrary opinion.

Fourth, Defendant claims that counsel was ineffective for failing to present the testimony of Cathy Johnson, the day labor supervisor who assigned jobs to both Defendant and Mark Fuqua. This claim has already been addressed above as the second portion of issue one.

(Dkt. 24, Ex. 17 at pgs. 1-4).

The record supports the state circuit court's findings. Corporal Hensley testified that he saw Petitioner at the scene of the accident, at the hospital after the accident, and again at the hospital the day after the accident. He testified that he saw no bruises or other signs of injury on Petitioner's face (Dkt. 24, Ex. 1, Supp. VII at pgs. 1015-17). Petitioner does not allege that he ever received any treatment or care for any injury he allegedly received to his face or head, or that he had any visible signs of injury to his face or head, despite the fact that he claims he was brutally attacked by Fuqua, and repeatedly punched in the face and head until he was unconscious. With his motion for rehearing of the order denying his state Rule 3.850 motion for post-conviction relief, Petitioner provided the state circuit court with an x-ray report dated December 22, 1995, from Tampa General Hospital which states in pertinent part "Diagnosis:

Negative head. Possible fx L nasal bone." (Dkt. 24, Ex. 18 [Ex. A]). Petitioner does not, however, establish or allege that he actually suffered a fractured nose, or that if he had, that it was caused by Fuqua hitting him as opposed to the massive impact between his car and the Nicola's car.

As to Petitioner's claim regarding counsels' alleged failure to obtain Fuqua's prior mental health history, it is apparent from the record that counsel attempted to introduce such evidence through a number of witnesses. It is also apparent from counsel's argument regarding the admissibility of evidence of Fuqua's state of mind, that counsel had investigated Fuqua's mental health history and was well aware of Fuqua's alleged suicidal tendencies, suicide attempt, and depression, and aware that Fuqua had been "Baker Acted" and was taking medication and receiving counseling (Dkt. 24, Ex. 1, Supp. V at pgs. 675-88). Petitioner does not specifically identify any other witness counsel could have spoken with who would have given testimony regarding Fuqua's state of mind, nor explain how the witness would have established the relevance of Fuqua's alleged history of depression or suicide attempt.

Petitioner's claim that counsel were ineffective for failing to secure medical experts to testify regarding the effect of the combination of alcohol and anti-depressants on Fuqua's state of mind is without merit. Petitioner presents no evidence, from a medical expert or otherwise, in support of his claim that the combination of alcohol and anti-depressants would have caused Fuqua to become depressed or suicidal. Moreover, Petitioner does not point to any evidence showing that Fuqua had both alcohol and anti-depressants in his system at the time of the

22

accident.[7] Therefore, he wholly fails to demonstrate that counsel provided deficient representation for failing to hire a medical expert, or that the failure to obtain a medical expert was prejudicial to his defense.

Finally, Petitioner cannot show counsels' performance was deficient for failing to present Catherine Johnson's testimony regarding Fuqua's mental state because counsel attempted to introduce Johnson's testimony on the matter, but the state court ruled that Johnson's testimony was inadmissible because it was either hearsay or not relevant (Dkt. 24, Ex. 1, Supp. VI at pgs. 987-92).

Petitioner does not present clear and convincing evidence rebutting the state court's factual findings. See 28 U.S.C. §2254(e)(1). Petitioner has failed to establish that the state trial court's denial of this claim of ineffective assistance of trial counsel was contrary to or an unreasonable application of the *Strickland* standard or resulted in a decision that is based on an unreasonable determination of the facts. See 28 U.S.C. §2254(d). Thus, relief on Ground Eight will be denied.

B. Ground Nine

Denial of effective assistance of counsel where counsel failed to object to prosecutorial misconduct and comments made concerning the defense (Dkt. 1 at pg. 22).

Petitioner alleges that trial counsel were ineffective for failing to object to and preserve for appellate review the State's allegedly improper and prejudicial remarks during the State's closing argument. In denying the claim, the state circuit court stated:

> Defendant alleges several instances of prosecutorial misconduct and

---

[7]Catherine Johnson proffered that Fuqua did not take his medication if he was drinking (Dkt. 24, Ex. 1, Supp. VI at pgs. 971-72).

improper comments made during closing argument. Defendant claims the State's comment that, according to Dr. Wood, a person with a blood alcohol level of .25 would have had to drink twelve beers in 60 minutes was unsubstantiated by the record because Dr. Wood did not so testify. Although Dr. Wood did not so testify, Dr. Hillman did. *See Trial Transcript, pp. 637-38.* Therefore, any error in attributing the testimony to the wrong witness is harmless.

Defendant also claims that the State commented that trial counsel stated that Mark Fuqua was not protected by an airbag. Trial counsel argued in closing that had Mark Fuqua been facing forward and not wearing a seat belt, he would have gone through the windshield. *See Trial Transcript, p. 1100.* Therefore, although counsel did not specifically state that Mark Fuqua was not protected by an airbag, he implied it.

Defendant also claims that the [sic], contrary to the State's assertion at closing, counsel had not stated that Mark Fuqua climbed over, or put his leg over, the center console of the vehicle. However, counsel had asked Dr. Wood if it was possible for Mr. Fuqua to reach over with one leg and accelerate the car. *See Trial Transcript, p. 616.* Furthermore, Defendant testified that he did not know what happened after he was knocked unconscious. The State's comment is a fair interpretation of the evidence, speculating as to how the vehicle accelerated after Defendant, the driver of the vehicle, was rendered unconscious.

Defendant claims that many of the State's comments were disparaging and prejudicial. However, other than the fact that they were harmful to Defendant's theory of defense, Defendant fails to show how the State's comments were improperly or unfairly prejudicial. Finally, Defendant claims that the State improperly bolstered the prosecution witnesses, but does not allege which witnesses he is referring to, or how the State improperly bolstered their testimony.

Defendant has failed to establish that the State's conduct during closing argument was improper. Accordingly, Defendant has failed to establish that counsel's failure to object was deficient performance. Furthermore, counsel argued each of the points Defendant included in this issue at a hearing on Defendant's previously denied motion for a new trial.

(Dkt. 24, Ex. 17 at pgs. 5-6). The state circuit court reasonably determined that the comments were proper, or that Petitioner was not prejudiced.

Even if any of the comments were improper, the result of the proceeding would not have changed if defense counsel had objected and preserved the issues for review. The comments were not so egregious as to warrant a new trial. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643

(1974) (improper prosecutorial comment not reversible error unless remarks "so infect the trial with unfairness as to make the resulting conviction a denial of due process"); *Strickland v. Washington*, 466 U.S. at 695 (to find prejudice for purposes of ineffective assistance claim, court "must consider the totality of the evidence before the judge or jury").

Trial counsel was not constitutionally ineffective in failing to object to the comments, or failing to move for a mistrial based on the aforementioned remarks by the prosecutor. It would have been futile for counsel to have done so, given the "wide latitude" accorded counsel in making closing arguments. Florida law affords wide latitude to counsel in closing arguments. *See Breedlove v. State*, 413 So. 2d 1, 8 (Fla. 1982). The state trial court's affirmance of the denial of the allegations in Ground Nine did not constitute a decision that was contrary to or an unreasonable application of *Strickland*. Accordingly, Petitioner is not entitled to habeas relief on Ground Nine.

C. Ground Ten

Denial of effective assistance of counsel where counsel failed to properly and adequately argue suppression of the blood alcohol tests conducted at the hospital (Dkt. 1 at pg. 24).

Petitioner essentially argues that trial counsel was ineffective for failing to make a facially sufficient argument to suppress the results of the test of Petitioner's blood drawn at the hospital. Petitioner further argues that during the hearing on the motion to suppress, the trial court ruled that the motion to suppress was more properly construed as a motion to strike, and denied it as facially insufficient. Petitioner complains that trial counsel was ineffective for failing to renew the motion to suppress or motion to strike. In denying this claim, the state circuit court stated:

> Defendant claims that counsel did not properly argue to suppress the results of the test of Defendant's blood drawn at the hospital. The results of the test were orally transmitted by hospital personnel to the officer investigating the accident. Subsequently, the State obtained the records containing those results pursuant to a

subpoena. Trial counsel argued that because the results were known to the State prior to their being obtained by subpoena in accordance with proper procedure, that the results should be suppressed. *See Motion to Suppress, pp. 7-14.* Defendant's motion was denied as facially insufficient because the medical records were properly obtained pursuant to a subpoena, and the alleged violation of doctor-patient privilege was not a violation by the State of § 395.3025(4)(d). *See Motion to Suppress, pp. 14-16.*

Defendant claims that the Court ruled that the motion to suppress was more properly construed as a motion to strike, and that counsel failed to renew the motion to suppress or to again present the motion to strike. Defendant has misinterpreted the Court's treatment of the hearing as a State's motion to strike Defendant's motion to suppress. *See Motion to Suppress, pp. 14-16.* The Court did not imply that Defendant's motion to suppress should have actually been a motion to strike. Therefore, there was no motion to strike for counsel to present again.

Furthermore, although the motion to suppress was denied as facially insufficient, the denial was a substantive denial of the allegations contained therein as not being in violation of the statutory provision, rather than a denial on mere procedural grounds. *See Motion to Suppress, pp. 14-16.* Defendant has failed to state what additional or different information counsel should have presented in a further motion to suppress, but simply reargues the same position as previously argued by counsel at the hearing.

(Dkt. 24, Ex. 17 at pgs. 6-7).

Petitioner's argument that counsel were ineffective for failing to renew the motion to suppress is without merit as the state trial court clearly denied the motion to suppress on the merits (Dkt. 24, Ex. 1, Supp. I at pg. 341). To the extent he argues counsels' motion to suppress was insufficient, Petitioner's claim fails because he wholly fails to show counsels' performance was deficient. Petitioner fails to allege what other grounds counsel should have presented in the motion to suppress that would have been successful. *See Chandler v. Moore*, 240 F.3d 907, 917-18 (11th Cir. 2001) (rejecting argument for ineffective assistance of counsel where counsel failed to raise a non-meritorious claim). Petitioner fails to show that the state court unreasonably applied *Strickland*. Accordingly, Petitioner is not entitled to relief on Ground Ten.

D. Ground Eleven

Denial of effective assistance of counsel where counsel failed to object to improper and prejudicial "shotgunning" of charges against the defendant when the State is aware that defendant cannot be sentenced for charges included in the information that arose from a single death (Dkt. 1 at pg. 26).

Petitioner alleges that the State charged him with, *inter alia*, two counts of DUI manslaughter and two counts of culpable negligence. He asserts that the jury convicted him of all counts, but the culpable negligence counts were dismissed because Florida law forbids the conviction and sentencing for DUI manslaughter and culpable negligence arising from the same death.[8] Petitioner argues that this "cumulative charging" by the State served only to make him look bad, and that counsel was ineffective for failing to object to the State's charging him with both DUI manslaughter and culpable negligence and preserve it for further review. In denying this claim, the state circuit court stated:

> Defendant was charged with two counts of DUI manslaughter and two counts of culpable negligence manslaughter as the result of two deaths. The jury found Defendant guilty of both DUI manslaughter and culpable negligence manslaughter for both deaths, but Defendant was sentenced only on the DUI manslaughter charges. Defendant acknowledges that the culpable negligence manslaughter charges were dismissed, but claims that counsel should have objected to his being charged with both types of manslaughter. Although Defendant is correct that he cannot be convicted and sentenced for both DUI manslaughter and culpable negligence manslaughter, there is nothing improper in the State charging him with both offenses. Therefore, counsel had no basis to object.

(Dkt. 24, Ex. 17 at pg. 7).

Petitioner wholly fails to demonstrate that counsels' performance was deficient as he fails to establish that charging him with both DUI manslaughter and culpable negligence was improper under Florida law. Again, counsel does not render ineffective assistance for failing to raise a meritless objection or argument. *See U.S. v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (lawyer's failure to

---

[8]In Florida, "[o]nly one homicide conviction and sentence may be imposed for a single death." *Houser v. State*, 474 So.2d 1193, 1196 (Fla. 1985).

preserve a meritless issue cannot prejudice a client). Accordingly, Ground Eleven does not warrant habeas relief.

E. Ground Twelve

Denial of effective assistance of counsel where counsel failed to adequately and effectively argue a violation of the clergyman's privilege by the state (Dkt. 1 at pg. 28).

During trial Chaplain Roger Buckley testified that while he was at the hospital, Petitioner told him that he did not remember what had happened during the car accident (Dkt. 24, Ex. 1, Supp. V at pgs. 659-62). Petitioner argues that trial counsel were ineffective for not adequately arguing a violation of the clergy-penitent privilege. Specifically, he opines that counsel should have argued that the privilege belongs to the person seeking spiritual advice (in this case Petitioner), Petitioner never waived the privilege, and Chaplain Buckley spoke with Petitioner in his capacity as a clergyman. In denying this claim, the state circuit court stated:

> A hospital chaplain testified that when he approached Defendant at the hospital and asked him what happened, Defendant stated with a "wry grin" that he did not remember. *See Trial Transcript, pp. 662-63.* Trial counsel objected and attempted to suppress the chaplain's testimony on the basis of the clergyman-penitent privilege. *See Trial Transcript, pp. 659-61.* That objection was overruled and counsel moved for a mistrial. *See Trial Transcript. p. 661.* Counsel again objected and moved for a mistrial when the State questioned Defendant regarding those statements. *See Trial Transcript, pp. 910-11.* Defendant claims that counsel did not argue the matter adequately and effectively because counsel did not specifically state that the privilege belongs to, and can only be waived by, the Defendant and not the chaplain. However, by overruling the objection, the Court found that the situation was not covered by the privilege. Therefore, argument over who can assert the privilege would be irrelevant.

(Dkt. 24, Ex. 17 at pgs. 7-8).

Contrary to Petitioner's claim, counsel did argue that Petitioner's statement to Chaplain Buckley was privileged because Chaplain Buckley spoke with and counseled Petitioner in his capacity as a spiritual advisor (Dkt. 24, Ex. 1, Supp. V at 659-61). The state trial court overruled the objection and stated "[b]ased on 9505 [sic] Subsection 2, I'm denying your objection." (Id. at 661).

28

In overruling the objection on the basis of subsection (2) of the statute, it is apparent that the trial court found the statement was not a privileged confidential communication. The state court's decision that Petitioner's statement was not covered by the privilege is a matter of state law. This state law determination cannot be revisited on federal habeas review, as state courts are the ultimate expositors of state law. *Mullaney v. Wilbur*, 421 U.S. at 691. Therefore, because Petitioner's statement to Chaplain Buckley was not a privileged communication, Petitioner fails to show counsels' performance was deficient for failing to argue that the privilege could be claimed by Petitioner, and that he did not waive it.

Moreover, even if counsels' performance were deficient, in light of the other evidence at trial that Petitioner was highly intoxicated and operating the vehicle at the time of the crash, Petitioner has failed to establish sufficient prejudice as a result of Chaplain Buckley's testimony.

Petitioner fails to show that the state circuit court unreasonably applied *Strickland*. Accordingly, Petitioner is not entitled to habeas relief pursuant to Ground Twelve.

F. Ground Thirteen

Denial of effective assistance of counsel where counsel failed to properly investigate and prepare for a defense and denied the defendant a fair trial (Dkt. 1 at pg. 30).

Petitioner argues that he had stressed to his trial counsel that Fuqua had been irrational on the day of the accident, and that Fuqua, who wanted to commit suicide, caused the crash by grabbing the steering wheel and knocking out Petitioner. Petitioner claims that counsel did not believe his defense, and that counsel failed to adequately investigate the facts regarding his defense.

In his Rule 3.850 state post-conviction motion, Petitioner essentially argued that counsels' cumulative errors deprived him of the opportunity to present his defense. Petitioner also argued that he was prejudiced by Mr. Bartlett's inexperience and ineptness, and Mr. Kiley having to continually

leave the courtroom to get something to eat or take medication for his diabetes, and his use of profanity during the trial (Dkt. 24, Ex. 15 at pgs. 13-18). In denying this claim, the state circuit court stated:

> Defendant claims that the cumulative effect of all of counsel's errors deprived him of the ability to present his defense. This claim consists mainly of a rehashing of all of the issues previously alleges in issues one through 5. In addition, Defendant complains that the lead counsel in his case was inexperienced and that he would not have accepted his representation had he known. The record shows that, although lead counsel may have been inexperienced, he was supervised by an experienced member of the Public Defender's office. Defendant acknowledges that lead counsel was supervised, but complains also that lead counsel consulted constantly with his supervisor during trial. These complaints are not valid complaints of ineffective representation by counsel in accordance with the requirements of *Strickland*, as they do not consist of specific acts or omissions by counsel.
>
> Similarly, Defendant's complaint that supervisory counsel had to request recesses due to his diabetic condition is not a valid claim of ineffective assistance of counsel. Nor does his complaint that counsel was abrasive with Defendant and apologized for using profanity in conversation constitute a valid ineffective assistance of counsel claim. Accordingly, this claim is denied.

(Dkt. 24, Ex. 17 at pgs. 8-9).

To the extent Petitioner argues that the cumulative effect of trial counsels' errors amount to a denial of effective assistance of counsel, Petitioner can prove cumulative error only be demonstrating two or more errors. "Without harmful errors, there can be no cumulative effect compelling reversal." *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984), *cert. denied* 469 U.S. 1158 (1985).[9] Petitioner has failed to demonstrate counsel committed any prejudicial error. Consequently, the state court's rejection of Petitioner's cumulative error argument was not unreasonable.

To the extent Petitioner argues Mr. Bartlett was inexperienced and inept, the record

---

[9]*See also Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987) ("Mullen cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit. We receive enough meritless habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it. Twenty times zero equals zero.").

demonstrates that he was supervised and assisted by Mr. Kiley, an experienced defense attorney, throughout the course of the trial. Moreover, Petitioner fails to establish Mr. Bartlett's representation amounted to ineffective assistance of counsel or was prejudicial to Petitioner, or that Mr. Kiley leaving the courtroom for food or medicine and his use of profanity[10] amounted to ineffective assistance and was prejudicial.

Petitioner has not met his burden of proving that the state court's determination is an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of the facts. Accordingly, Petitioner is not entitled to habeas relief on Ground Thirteen.

## IV. Resentencing Claims (Grounds Fourteen and Fifteen)

A. Ground Fourteen

Trial court erred by enhancing the defendant's guideline sentence through judicial fact finding in violation of <u>Apprendi</u>, <u>Blakely</u>, and <u>Booker</u> decisions, where the jury verdict fails to support the judge's finding of "severe" victim injury (Dkt. 1 at pg. 32).

Petitioner argues that when he was re-sentenced for the second time, the state sentencing judge erred by enhancing his sentence under the state's sentencing guidelines through judicial factual findings. Specifically, Petitioner contends that the sentencing judge's finding of severe victim injury is not supported by the jury's verdict.[11] He argues that the state judge's assessment of the victims' injuries as severe violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005). In his supplement to this

---

[10]Shortly after Deputy Barrington testified that after the crash Petitioner said "get this fucking guy [Fuqua] off of me...", Mr. Kiley asked Deputy Barrington "[d]id you get that fucking guy off him - -" (Dkt.24, Ex. 1, Supp. III at pg. 239). The trial judge then held a bench conference and admonished Mr. Kiley, and Mr. Kiley apologized, stated that he thought he "was quoting the evidence", and stated that he "would not do it again" (Id. at pgs. 239-40).

[11]Petitioner avers that he should have received only 36 points towards his total sentencing points for "moderate" victim injury instead of the 80 points he received for "severe" victim injury. (See Dkt. 24, Ex. 26, Vol. 1 at pg. 12). He argues that had he only received 36 points for victim injury, his sentence would have been 24.79 years prison instead of 29.3 years prison.

argument, Petitioner argues that the Supreme Court's opinion in *Cunningham v. California*, 549 U.S. 270 (2007) establishes that the judge's finding of severe victim injury violates *Apprendi/Blakely/Booker*. (See Dkt. 25).

Initially, a sentence violates due process under *Apprendi, Blakely*, or *Booker* only when it exceeds the applicable statutory maximum. *See Apprendi*, 530 U.S. at 490 ("[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); *United States v. Taylor*, 2009 U.S. App. LEXIS 5067, 2009 WL 524733 at *2 (11th Cir. Mar. 3, 2009)(unpublished opinion)(there is no *Apprendi* or *Booker* error unless the "actual" or "ultimate" sentence imposed exceeds the unenhanced statutory maximum)(citing *United States v. Sanchez*, 269 F.3d 1250, 1270 (11th Cir. 2001)). In *Blakely*, the Supreme Court, addressing the Washington state statutory scheme, clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* [ ] In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Blakely*, 542 U.S. at 303 (emphasis in original) (citations omitted).

In Florida, "[u]nder the sentencing guidelines, a narrow range of permissible sentences is determined through a strict mathematical formula. It is then within the trial judge's discretion to sentence the defendant within that narrow range. . . . The sentencing guidelines limit the discretion of sentencing judges to impose presumptive sentences and only allow departure upon written findings of aggravation or mitigation." *Behl v. State*, 898 So. 2d 217, 221 (Fla. 2d DCA 2005)(quoting *State v. Matthews*, 891 So. 2d 479, 488-90 (Fla. 2004)) (citations omitted). "Accordingly, a guidelines

sentence imposed at a level that is only permissible because victim injury points were assessed will exceed the 'statutory maximum' for *Apprendi* purposes if the victim injury points were not based on a determination made by the jury or on an admission of the defendant." *Behl*, 898 So. 2d at 221.

In Petitioner's case, the guidelines sentence imposed of 29.3 years in prison was only permissible because victim injury points were assessed (Dkt. 24, Ex. 26, Vol. 1 at pgs. 12-13). Petitioner argues that the victim injury points were not based on a determination made by the jury or on his admission. Therefore, he avers, his sentence exceeds the "statutory maximum" for *Apprendi* purposes, and violates his rights under the Sixth Amendment.

Petitioner's argument is without merit. In Florida, "[t]he jury's findings of DUI manslaughter and DUI serious bodily injuries support the imposition of the death and severe victim injury points." *Arrowood v. State*, 843 So. 2d 940, 941 (Fla. 1st DCA 2003). The jury found Petitioner guilty of two counts of DUI causing serious bodily injury. Therefore, the eighty points for severe victim injury were assessed "solely on the basis of the facts reflected in the jury verdict." *Blakely*, 542 U.S. at 303. Accordingly, there was no violation of *Apprendi/Blakely/Booker*. [12]

Consequently, Petitioner is not entitled to habeas relief on Ground Fourteen.

B. Ground Fifteen

---

[12]The Court also notes that *Apprendi/Blakely/Booker* error is subject to a harmless error analysis. *See Washington v. Recuenco*, 548 U.S. 212 (2006). During Petitioner's trial, Dr. Franz testified that he treated Rita Nicola, the driver of the vehicle Petitioner struck, at the hospital and that "she had a *severe* fracture to her right femur or thigh bone..." which required surgery and placement of a metal rod in her leg, and the rod will affect her ability to move for the remainder of her life (Dkt. 24, Ex. 1, Supp. V at pgs. 624-26)(emphasis added). Danielle Nicola testified that as a result of the car accident she was hospitalized for two days, broke her arm, received an injury to her head which required stitches and left a permanent scar, and injured her neck (Dkt. 24, Ex. 1, Supp. III at pgs. 217-18). *See, e.g., Ely v. State*, 719 So.2d 11, 13 (Fla. 2d DCA 1998)(trial court did not abuse its discretion when it imposed points for severe victim injury where trial record contained victim injury of a broken nose, chipped teeth, and bruises). Accordingly, in light of the uncontested record evidence, no reasonable jury would have returned a verdict finding that there was no severe victim injury. *See Neder v. United States*, 527 U.S. 1, 18 (1999)(the harmless-error inquiry asks "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?").

Trial court erred by imposing multiple DUI manslaughter sentences involving multiple victims arising out of a single criminal episode based on the "a/any" test for unit of prosecution and the rule of lenity (Dkt. 1 at pg. 34).

Petitioner argues that the state court erred in imposing multiple DUI manslaughter sentences involving multiple victims in a single criminal episode. He also argues that as a result of the multiple sentences he was deprived of procedural and substantive due process.

To the extent Petitioner argues that the state court erred in imposing multiple DUI sentences, that is a state law sentencing issue not cognizable on § 2254 federal habeas review. It is well-settled in this circuit that federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures. *Branan v. Booth*, 861 F.2d 1507 (11th Cir. 1988); *Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983). Petitioner has no recourse in this Court to challenge what he perceives to be an error in state sentencing procedures. Furthermore, the claim is without merit as "the a/any test adopted in *Grappin* does not preclude multiple convictions of DUI manslaughter where multiple deaths occur in a single DUI crash." *Bautista v. State*, 863 So. 2d 1180, 1188 (Fla. 2003).

Moreover, Petitioner did not present this sentencing issue in the state court as a federal due process violation (See Dkt. 24, Ex. 8 at pgs. 21-31). Consequently, the claim is unexhausted and procedurally barred. Petitioner has not demonstrated cause and prejudice or a miscarriage of justice to obtain federal review of the defaulted claim.

Accordingly, Ground Fifteen does not warrant federal habeas corpus relief.

### Conclusion

For the foregoing reasons, the Court finds that Petitioner is not entitled to federal habeas relief.

ACCORDINGLY, the Court **ORDERS** that:

1. The Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 1).

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**DONE and ORDERED** in Tampa, Florida, on _March 26th_, 2009.

JAMES D. WHITTEMORE
United States District Judge

SA:sfc
Copy to: Petitioner *pro se*
      Counsel of Record